Thomas BRADLEY, Mayor, City of Los Angeles, et al., Plaintiffs and Petitioners, Appellants,

v.

JUDGES OF the SUPERIOR COURT FOR the COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, as a class, represented By Alfred J. McCOURT-NEY, Jr., Presiding Judge, Defendants and Respondents, Appellees.

No. 74–2189.

United States Court of Appeals, Ninth Circuit.

Feb. 4, 1976.

414

G. Keith Wisot (argued), Deputy Public Defender, Fred Okrand (argued), Los Angeles, Cal., for appellants.

Robert F. Katz, Deputy Atty. Gen. (argued), John P. Farrell, Deputy County Counsel (argued), Los Angeles, Cal., for appellees.

OPINION

Before TRASK and CHOY, Circuit Judges, and VON DER HEYDT,* District Judge.

* The Honorable James A. von der Heydt, United States District Judge, District of Alaska, sitting by designation.

CHOY, Circuit Judge:

This appeal challenges the constitutionality of Cal.Code Civ.P. § 206, governing jury selection, and the validity of convictions obtained under it. The district court dismissed the constitutional attack and denied the petitions for habeas corpus. We dismiss in part and affirm in part.

## Background

Los Angeles County is divided into nine judicial districts. The Central District contains large concentrations of the county's Black and Hispanic populations. For example, 32% of the Central District's population is Black, compared with 11% of the population of the county as a whole. Approximately 65% of the county's Black population resides in the Central District.

Jury selection for Los Angeles County is governed by Cal.Code Civ.P. § 206. Section 206, as it stood at the time this lawsuit was commenced, permitted the selection of jurors in either of two ways: In one (district draw) jurors are chosen from voters residing in the district of the trial. The other (dual draw) is the same, except that jurors for Central District trials are chosen from the voters of the whole county.

■ The choice of jury selection system was given to the judges of the Superior Court of the county. They chose the dual draw system. The use of the dual draw

system results in a diminution of the participation of minority group members on juries. The dual draw produces juries with 5.5% Black representation. The Black population of Los Angeles County is 11%. The Black population of the Central District is 31.5%, and a county draw produces 8% Black representation.[1]

■ All appellants (appellants) were plaintiffs in a Civil Rights Act[2] action. They allege that the dual draw system denied them equal protection of the law.[3] Some of the appellants (petitioners-appellants) are also petitioners for writs of habeas corpus.[4] The petitioners-appellants allege violations of due process and jury trial rights guaranteed by the Constitution,[5] as a result of being tried in the Central District, by juries chosen by the dual draw system.

The district court, in *Bradley v. Judges of Superior Court*, 372 F.Supp. 26 (C.D.Cal. 1974), dismissed the Civil Rights Act action, holding abstention proper under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The petitions for habeas corpus of Adams and Patterson were denied for lack of exhaustion of available state remedies. See 28 U.S.C. § 2254. Reaching the merits of the remaining habeas petitions, the court upheld the dual draw system. It rejected arguments that the use of a jury drawn from the voters of the county violated either due process or sixth amendment rights or that the petitioners had been prej-

---

1. There is a difference between the number of Blacks qualified for jury service and the number of qualified Blacks on voter lists. The use of voter lists has been upheld. *See e. g., United States v. Parker,* 428 F.2d 488 (9th Cir.), *cert. denied* 400 U.S. 910, 91 S.Ct. 155, 27 L.Ed.2d 150 (1970). This does not mean that the number of Black registered voters rather than the number of qualified Blacks is appropriate as the number for comparison. A set of requirements, no one of which is of itself unconstitutional, may, when combined, be unconstitutional.

2. 42 U.S.C. § 1983.

3. Both potential jurors and defendants can challenge jury selection procedures. *Carter v. Jury Commission,* 396 U.S. 320, 329, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970). Moreover, criminal defendants can attack jury selection procedures, on appeal or by petition for writ of

habeas corpus, without alleging that they were prejudiced by the panel in their case. This is because the injury is considered to be not only to the defendant, but also to " . . . the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Ballard v. United States,* 329 U.S. 187, 195, 67 S.Ct. 261, 91 L.Ed. 181 (1946).

4. The writs are sought under 28 U.S.C. §§ 2241(c)(3), 2251 and 2254.

5. Due process is, of course, guaranteed, with regard to state action by the fourteenth amendment. The sixth amendment right to jury trial applies by "incorporation" in the fourteenth amendment to state action as well. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

udiced by the particular juries so drawn in their trials.

The petitioners-appellants' equal protection claim was rejected as well. The court held that, under *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), no suspect classification was involved, no fundamental interest had been denied, and that, while there was no compelling state interest supporting the dual draw system, it only had to, and did, meet a rational basis test.[6] The rational basis was provided by differences in the trials held in the Central District. These differences included the docketing of all trials from grand jury indictments in the Central District and the fact that, as most of the major law firms are located in the Central District, much of the major litigation, involving issues of county-wide concern, is tried there.

Subsequent to the filing of this appeal section 206 was revised by the state legislature. All jury panels in Los Angeles County are now drawn from the registered voters of the county without regard for the judicial district of the trial or the jurors' residence (county draw). Persons residing more than 20 miles from the place of trial are allowed to excuse themselves from attendance.[7]

*Constitutionality of amended section 206*

Whatever the constitutional defects of the dual draw system may have been, the amendments to section 206 appear to have cured them.

■ Equal protection violations[8] of the dual draw system could have been cured by instituting either a district draw or a county draw system. Each can be complained about: The former gerrymanders minorities out of the larger community; the latter reduces the possibility of large numbers of minority persons on particular panels. Appellants argue that a district draw is affirmatively required. This argument is not based on any assertion that equal protection requires certain representation on jury panels. Indeed, any such argument would be futile given cases such as *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).[9] The argument is based, rather, on the sixth amendment's guarantee of "an impartial jury of the State and district wherein the

6.  Appellants argue here that there is no rational relation between the classification and any legitimate state interest and that, therefore, there is a suspect classification. They have got things turned around. The presence of a suspect class gives rise to the requirement of more than a rational relation to a legitimate interest. A direct and succinct summary of equal protection can be found at Note, *The Irrebuttable Presumption Doctrine in the Supreme Court,* 87 Harv.L.Rev. 1534, 1535–36 n. 9 (1974).

7.  Cal.Code Civ.P. § 206 now reads, in pertinent part:
    (b) In a county of the first class all trial jurors shall be selected on a countywide basis. A person is exempt from liability to act as a juror in any court which is more than 20 miles from his residence. . . .
    We foresee no difficulties arising out of the 20 mile exemption, but we do not today decide that none can arise.

8.  In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) the Supreme Court stated that underrepresentation of a community group by as much as "10%" was not enough, by itself, to prove a violation of the equal protection clause. In *Swain* the reduc-

tion was from 26% of population to 15% of venire. This is a reduction of around ten percentage points, but represents a more than 40% reduction in representation. In the present case, the reduction is of five and one-half percentage points and 50%. The *Swain* test is clearly inadequate. An adequate statistical test should consider the real percentage of reduction, the numbers of people involved, and the percentage of the population that they constitute.

9.  Equal protection in the jury selection area is in a philosophical bind. On the one hand, no group ought to be excluded from a jury. This is not only for the sake of the juror, who would be stigmatized by the exclusion, but also for the defendant's sake even if he is not of the same group as the excluded juror. We believe that each group in the community contributes something to the jury. At the same time, we do not require that all groups be represented on any particular jury. Indeed, to do so would be, in some sense, racist because it would imply some inherent difference between the various groups.

crime shall have been committed" and the requirement that the jury be acquainted with local conditions, customs, and mores, *United States v. Duncan,* 456 F.2d 1401 (9th Cir.) *rev'd on other grounds,* 470 F.2d 961 (9th Cir. 1972).

A requirement that juries in criminal trials be drawn from "the vicinage," contained in James Madison's proposed version of the sixth amendment was deleted by the Senate. Such a requirement was felt to be too strict. At the time, juries were drawn from the county in only a few states, and juries drawn from a whole state were not unheard-of. 1 Letters and Other Writings of James Madison 491–93 (1865) quoted in *Williams v. Florida,* 399 U.S. at 95 n. 39, 90 S.Ct. 1893 (1970).

While Los Angeles County is more populous than the United States was at the time the Bill of Rights was adopted, that population is concentrated in a small area (half the size of Massachusetts) and linked by an efficient network of transportation and communications. Mere numbers do not make modern Los Angeles County a less acceptable vicinage than a state of the Revolutionary period with a dispersed and isolated population.

Appellants also contend that juries must be drawn from the Central District because it is a community distinct from the rest of the county. This court is loath to attempt to discover or define communities, in Southern California or anywhere else; the Constitution does not mandate it to do so in this case. Even if the Central District resident has something special about him, we will not treat him differently from Black people or women by requiring that he be represented on certain juries. The present version of section 206 appears adequate to insure participation by a cross-section of a population with sufficient knowledge of local conditions.

■ Additionally, we note that the "district" from which the Constitution requires a jury to be drawn need not be identical to a judicial subdivision such as the Central District.[10]

### Mootness of the Civil Rights Act action

■ Since the amendments to section 206 have removed any constitutional infirmity complained of here, the Civil Rights Act action is dismissed as moot.

### Petitions for habeas corpus

■ The petitions of petitioners-appellants Adams and Patterson were denied for lack of exhaustion of state remedies. This was proper, *White v. Ragen,* 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945), and is affirmed.

The remaining petitioners-appellants make three arguments: 1) the failure to use a jury drawn from Central District residents violated their right to trial by a jury of the local community; 2) the use of the dual draw system violated their due process rights by defining community differently for defendants tried in different districts and the sixth amendment's requirement that the district be previously ascertained by law by delegating a choice of either a dual draw or a district draw system to the judges; and 3) the dual draw system violated equal protection by reducing the participation of minority and poor persons on jury panels.

■ We reject the first of these contentions for the reasons stated above in discussing the constitutionality of amended section 206. Also for the reasons stated above, we reject the equal protection, due process and sixth amendment claims insofar as they refer to the particular juries which convicted the petitioners-appellants. Since petitioners-appellants were convicted by county-drawn juries, and since the use of the county in drawing a jury does not, of itself, deny a fair trial or reduce the participation of any cognizable class, the specific panels in petitioners-appellants' trials are not subject to attack without allegations of

---

10. *United States v. Florence,* 456 F.2d 46 (4th Cir. 1972); *McNealy v. Johnston,* 100 F.2d 280 (9th Cir. 1938).

prejudice. No such allegations are made in this case.

██ Habeas petitioners have been allowed to bring collateral attacks on their convictions on grounds of unconstitutional jury trial without being required to show that they were in fact prejudiced by the jury in question. See *Taylor v. Louisiana,* 419 U.S. 522, 538–39, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (Rehnquist, J., dissenting). However, only petitioners challenging jury selection systems in effect at the time that the court hears their appeal have automatically been entitled to a new trial. Once the unconstitutionality of a jury selection system has been determined, subsequent petitioners must argue that the decision which struck down the system should be applied retroactively. Compare *Taylor v. Louisiana,* supra (exclusion of women from jury panels unconstitutional), and *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (sixth amendment applies to the states through the fourteenth amendment), with *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) (*Taylor* not retroactive), and *DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (*Duncan* not retroactive).

██ This case differs from retroactivity cases—there has been no judicial overturning of a statute or procedure, and, unlike *Taylor* or *Duncan,* the announcement of a new rule would not necessarily be involved in striking down former section 206. But, if the dual draw system was unconstitutional, the defect has been cured just as surely as if a court had ordered it cured, and petitioners-appellants are before us in a position equivalent to any appellant seeking retrospective application of a constitutional decision. Neither does it appear that the announcement of a new rule, the overturning of prior judicial opinion, is required to deny retroactivity. In *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) the Supreme Court held that nonpublic, sectarian schools could be reimbursed for services rendered up until its decision in *Lemon v. Kurtzman,* 403 U.S.

602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) which had invalidated such reimbursements. The Court found a lack of bad faith in reliance on the statute, and that the statute was not clearly unconstitutional even though it was clear that the statute would be challenged. 411 U.S. at 207, 93 S.Ct. 1463, 36 L.Ed.2d 151. The situation at hand is much the same.

A three-factor test, set out in *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), was used by the Court to determine the retroactivity of *Taylor* and *Duncan* in *Daniel* and *DeStefano.* That test weighs:

(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

388 U.S. at 297, 87 S.Ct. at 1970.

██ Applying these factors to this case, we come out in favor of nonretroactive application. If we had struck down the dual draw system, the purpose would have been to ensure the fair participation of all facets of the community in the jury system and to safeguard the rights of defendants tried under that system. Reliance by the authorities here was not on any past decision of the courts upholding the system, but as we have noted, the use of the dual draw system did not rest on bad faith and the system was not patently and obviously unconstitutional. Finally, retroactive application of the new system would do little to vindicate the interests asserted since the petitioners-appellants would be retried by juries chosen virtually identically to the juries which convicted them. Thus the change in section 206 would not be applied retroactively even if the former version had been unconstitutional.

██ The dual draw system did not violate due process by defining "community" inconsistently for the Central District and other districts. If all juries in subdivisions of judicial districts must be drawn from equivalent districts, then it would appear

that they would all have to be drawn from the same district. One district differs from another district as much as a district differs from the county. Neither does the delegation of a choice between two systems of jury selection to the judges of the superior court make the districts chosen any less "previously ascertained by law" than if the choice had been made by the legislature.

We can see no reason for granting the petitions.

Dismissed in part and Affirmed in part.