Opinion
ALARCON, J.
The defendant has appealed from his conviction for a violation of section 654.1 of the Penal Code.

Factual Background

Officer Victor Luis Carranza testified that he observed the defendant solicit two persons to pay $7 for transportation to Tijuana in his car. The People rested without presenting any evidence that the defendant was not authorized by law to provide such transportation or that he was not in possession of a valid license or permit to act as a carrier.

*1058
Issues Raised on Appeal

The defendant has raised the following issues on appeal:
1. Was it error to deny the defendant’s motion for entry of a judgment of acquittal because of the failure of the People to present evidence that the defendant did not possess a license or permit?
2. Was it error for the court to instruct the jury that the defendant had the burden of going forward with the evidence to create a reasonable doubt as to whether he had the requisite license or permit?
3. Was it error to deny the defendant’s motion to dismiss on due process grounds because of the failure of the arresting officer to obtain the names and addresses of the persons állegedly solicited?
4. Was it error to deny the defendant’s motion to quash the juiy panel?

Discussion

The Rule of Convenience

The trial court denied the defendant’s motion for the entry of a judgment of acquittal and instructed the jury on the defendant’s burden of going forward with the evidence on the theory that the rule of convenience should be applied to prosecutions under section 654.1 of the Penal Code. We agree.
We believe the principle expressed in People v. Boo Doo Hong (1898) 122 Cal. 606 [55 P. 402] is controlling on these facts. In Boo Doo Hong our Supreme Court held that where proof of the possession of a license would be a complete defense to the exercise of a trade or profession, the burden is on the defendant to prove the existence of such authority as a matter of convenience because the existence of such fact is peculiarly within his knowledge. In the instant matter the existence of a valid license or permit was within the knowledge of the defendant and could have been easily proved, if true, as a complete defense to the charge. No *1059 error occurred in the denial of the motion pursuant to section 1118.1 or in the giving of the challenged jury instruction.

No Duty to Investigate for Defense

The defendant asks us to extend the rule of People v. Kiihoa (1960) 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673] to the facts of this case. In Kiihoa, the Supreme Court held that the deliberate delay of a criminal prosecution until after a material witness for the defendant was no longer available was a violation of due process. In Bellizzi v. Superior Court (1974) 12 Cal.3d 33 [115 Cal.Rptr. 52, 524 P.2d 148], the Supreme Court pointed out that Kiihoa “involved the unavailability of a police informant. As such, the witness was in contact with, and under the control of, the prosecution. Realistically, only the prosecution could have assured the witness’ presence at trial, and thus fairness required that the People, rather than the defendant, bear the responsibility for maintaining that witness’ availability.” (Bellizzi at p. 37.) In the matter sub judice, the missing witnesses were not informants under police control. They were passing strangers accosted by the defendant.
The defendant, citing Eleazer v. Superior Court (1970) 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], states that the People have a duty to exercise diligence and make reasonable efforts to ascertain evidence pertaining to a defense. However, as pointed out by the Supreme Court in People v. Beagle (1972) 6 Cal.3d 441 at page 450 [99 Cal.Rptr. 313, 492 P.2d 1]: “Contrary to defendant’s contentions Eleazer v. Superior Court (1970) 1 Cal.3d 847, 851-854 [83 Cal.Rptr. 586, 464 P.2d 42], does not establish a standard of judicial review of official pretrial investigations nor does it impose a general duty on prosecutorial officials to serve as defense investigators.”

Denial of Equal Protection

Prior to trial the defendant moved to quash the jury panel on the ground (inter alia) that the method of selection of jurors for the “Metropolitan Session” of the Municipal Court for the Los Angeles Judicial District violated the defendant’s right to equal protection.
Defendant’s motion to quash the jury panel was denied on December 18,1974. The jury was empaneled on January 21, 1975.
*1060 Prior to 1974, the Municipal Court for the Los Angeles Judicial District had its own jury selection system which selected jurors solely from within its territorial boundaries.
On February 20, 1974, the Municipal Court for the Los Angeles Judicial District put into effect rule 48 which provides as follows:
“The same jury panel summoned for use in the Superior Court of Los Angeles County, is and shall be used for trial of both civil and criminal cases in this court, pursuant to the provisions of Section 203.1 of the Code of Civil Procedure.
“All jurors for Civic Center sessions of the court, including traffic, shall be selected from the same panel summoned for the Civic Center Departments of the Superior Court. Jurors for the West Los Angeles session of this court shall be selected from the same panel summoned by the West District of the Los Angeles Superior Court; for the Van Nuys and San Fernando sessions, from the Northwest District; and for the San Pedro session, from the South District.
“Except that all criminal jury trials arising out of offenses committed in that portion of the Van Nuys Branch of the Los Angeles Municipal Court lying within the North Central District of the Superior Court, and in that portion of the West Los Angeles Branch lying within the Southwest District of the Superior Court, shall be tried in the Central District of the Los Angeles Municipal Court.
“This rule to become effective upon the order of the Presiding Judge, but in no event later than June 1, 1974.”
At the time of the defendant’s motion (Dec. 18, 1974) the Central District of the Los Angeles Superior Court drew jurors from the entire County of Los Angeles.[1] All other superior court districts drew jurors from within the geographical boundaries of their districts. The effect of rule 48 on trials in the Metropolitan Session[2] is that jurors are drawn *1061 from the entire County of Los Angeles, including areas which are not within geographical boundaries of the judicial district. Jurors drawn for all other sessions of the Municipal Court for the Los Angeles Judicial District (West Los Angeles, Van Nuys, San Fernando, and San Pedro) are drawn from smaller geographical areas within the superior court district for that portion of Los Angeles County.[3]
Two constitutional questions appear from the facts of this case.
Can the municipal court select jurors from outside the boundary of its district?
Did the method of selection of jurors used at the time of trial violate the defendant’s right to equal protection of the law?
The defendant was charged with a misdemeanor allegedly committed within the City of Los Angeles. The venue or territorial jurisdiction for the trial of this matter was the Los Angeles Judicial District (see §§ 777 and 1462.2 of the Pen. Code). By definition, the jurisdictional territory of the Municipal Court for the Los Angeles Judicial District is not county wide, but is restricted to the “limited territory” or district within Los Angeles County over which it has criminal jurisdiction (see § 691, subd. 3 of the Pen. Code).
If jurors must be drawn solely from the district or territorial jurisdiction of a municipal court, a county-wide selection would be improper.
The Sixth Amendment to the United States Constitution provides in pertinent part: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law,...”
*1062 A literal reading of the quoted passage from the Sixth Amendment would require us to hold that the selection of the jurors who were not residents of the Los Angeles Judicial District violated the Constitution. However, the California Supreme Court has interpreted the Sixth Amendment as permitting a state to try a criminal case with a jury which includes persons from outside the territorial jurisdiction of the trial court (People v. Jones (1973) 9 Cal.3d 546, 553 [108 Cal.Rptr. 345, 510 P.2d 705]). The court held in Jones that the vicinage or community, from which the jury must be selected in a criminal prosecution can be greater in size than the venue, or place of trial. (See also Bradley v. Judges of the Super. Ct. (9th Cir. 1976) 531 F.2d 413.)
Appellant contends that the dual system of jury selection in effect at the time of his trial violated his right to the equal protection of the law. This issue, insofar as it is directed at the Municipal Court for the Los Angeles Judicial District, presents a question of first impression. Respondent has referred us to the decision of the United States Court of Appeals, Ninth Circuit in Bradley v. Judges of the Super. Ct. (9th Cir. 1976) 531 F.2d 413 as fully dispositive of “the only valid issue that Appellant has raised in his brief.”
In Bradley the petitioners argued that the dual-draw system used by the Los Angeles Superior Court denied them equal protection of the law. Section 206 of the Code of Civil Procedure “permitted the selection of jurors in either of two ways: In one (district draw) jurors are chosen from voters residing in the district of the trial. The other (dual draw) is the same, except that jurors for Central District trials are chosen from the voters of the whole county.” (Bradley v. Judges of the Super. Ct., supra.) (The choice of the judges of the superior court of the dual-draw system led to the constitutional challenge in the federal courts in the Bradley case.)
All of the petitioners who had faced criminal prosecution were tried in the Central District by juries selected county wide. The court in Bradley pointed out that the district court had rejected the petitioner-appellant’s equal protection argument on the ground that “no suspect classification was involved, no fundamental interest had been denied, and that, while there was no compelling state interest supporting the dual draw system, it only had to, and did, meet a rational-basis test. The rational-basis was provided by differences in the trials held in the Central District. These differences included the docketing of all trials from grand jury indict *1063 ments in the Central District and the fact that, as most of the major law firms are located in the Central District, much of the major litigation, involving issues of county-wide concern is tried there.” (Italics added.) In disposing of the constitutional challenges to the dual-draw system the Bradley court held: “Also for the reasons stated above, we reject the equal protection, due process and sixth amendment claims insofar as they refer to the particular juries which convicted the petitioners-appellants. Since petitioners-appellants were convicted by county-drawn juries, and since the use of the county, in drawing a jury, does not of itself deny a fair trial or reduce the participation of any cognizable class, the specific panels in petitioners-appellants’ trials are not subject to attack without allegations of prejudice. No such allegations are made in this case.” (Bradley v. Judges of the Super. Ct., supra.)[4]
Bradley thus teaches us that where, within the territorial jurisdiction of a trial court, a dual system of jury selection is used there must be evidence which meets the rational-basis test for the creation of separate classifications. In Bradley the court found a rational basis in the evidence presented as to (1) the differences in trials held in the Central District, (2) the docketing of trials resulting from grand jury indictments, and (3) the trial of major litigation by major law firms there.
In the matter before this court, no evidence was presented by the government to meet the rational-basis test. Furthermore, none of the differences relied on in Bradley to establish a rational basis have any application to the municipal court.[5] Under the rational-basis test adopted by the court in Bradley we would be compelled to reverse. In Adams v. Superior Court (1972) 27 Cal.App.3d 719 [104 Cal.Rptr. 144] the California Court of Appeal had before it the same question which was subsequently presented to the Ninth Circuit in Bradley—namely, whether the dual system of selection of jurors used by the Superior Court of Los Angeles County was unconstitutional.[6]
The court in Adams characterized the constitutional problem to be resolved as follows: “In short the issue is whether that difference in *1064 jury-panel composition as sanctioned by section 206 of the Code of Civil Procedure and as honored in actual practice, except for the brief period of time hereinabove noted, constitutes an unconstitutional classification. As will be explained, the answer depends upon whether the nature of the functions of the superior court in the Central District relating to criminal cases differs so substantially from the nature of the functions of the court in the other districts with respect to criminal cases as to afford a constitutional basis for the variation set forth in section 206 as to the geographical area to which resort shall be had in the jury selection process. [Italics added.]” (At p. 730).
The court in Adams determined that the proper test to be applied to the dual-selection system was not the rational-basis test but “the stricter standard” of whether such classification was “necessary to promote a compelling state interest” (Adams v. Superior Court, supra, p. 732). The court in Adams determined that the stricter equal protection standard was satisfied because of the “county-wide scope of a substantial portion of the actual and potential duties of the court sitting in the Central District in the trial by jury of criminal cases,” (Adams v. Superior Court, supra, p. 733). The duties referred to in the quoted passage included (1) the filing of indictments in the Central District (2) the trial of lengthy criminal trials transferred to the Central District from “branch” courts. As pointed out above, no evidence was offered in the instant matter which demonstrated any basis for the dual-system of jury selection nor was any suggested to us by the respondent. Thus, under either the rational-basis test or that of a compelling state interest, the government has failed to meet its burden to justify the challenged classification. We are left then with a record which establishes without contradiction that the county-wide panel from which the defendant’s jury was selected was drawn from an adult population consisting of only 15 percent Spanishsumamed persons, while if defendant had had a jury from the area within the Metropolitan Session it would have been drawn from an area with a Spanish sumamed adult population almost 50 percent greater (21 percent of the total population). The effect of the dual-draw system was to systematically exclude jurors who would provide a representative cross-section of each ethnic group in the Metropolitan Session by quantitatively diluting their numbers by including persons selected county-wide where the number of Spanish-sumamed adults is much smaller. In all the other sessions of the municipal court, the jurors are drawn in the same manner, i.e., not county-wide but from the district of the superior court where each session (West Los Angeles, Van Nuys, San *1065 Pedro and San Fernando) of the municipal court sits. In the absence of any evidence justifying these separate classifications we hold that the defendant was. denied equal protection of the law.
The judgment is reversed.
Marshall, P. J., and Cole, J., concurred.

The 1974 Legislature amended sections 203.3 of the Code of Civil Procedure so as to require the Municipal Courts of Los Angeles County to use the same panel summoned for use in the superior court. Section 206 was also amended in the same year so as to require that all trial jurors be selected on a county-wide basis. The effective date of these changes was July 1, 1975. Accordingly, these statutes as amended have no application to the issues we must decide.

The record is not totally free from doubt, but apparently the municipal court uses at least three different terms to describe the same district—Metropolitan Session, Civic Center Session, and Central District.

The evidence before the trial court established that a jury drawn from the Metropolitan Session of the Municipal Court for the Los Angeles Judicial District would be substantially dissimilar in racial or ethnic composition to one drawn from the entire county. While 21 percent of the adult population of the geographical area within the Metropolitan Session is Spanish sumamed, only 15 percent of that group is represented in the total county population. Further, only 8.92 percent of the actual jury panel for the Central District of the superior court were of Spanish surnames in the first six months of 1974.

The reasons stated above in the quoted passage immediately preceding this footnote refer to the analysis of the constitutional issues attributed to the district court in the Bradley opinion.

We assume that the Bradley court used the term “major litigation” to refer to civil litigation within the subject-matter jurisdiction of the court.

The petitioner Adams in the state Court of Appeal was also a petitioner-appellant in the Bradley proceeding.