[No. F021139. Fifth Dist. Apr. 25, 1995.]

In re SHAWNN F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
SHAWNN F., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts III and IV.*

**COUNSEL**

Carol L. Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and Edgar A. Kerry, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Shawnn F., a minor, appeared before the juvenile court on two Welfare and Institutions Code section 602 petitions. After trial, the court found that Shawnn drove without a valid driver's license and committed a battery. Shawnn claims in his appeal: (1) the juvenile court denied him the right to represent himself, (2) the "rule of convenience" does not apply to the burden of proof upon the charge of driving without a license, (3) the juvenile court failed to state whether the battery offense was

a felony or a misdemeanor, and (4) the trial court failed to consider his ability to pay a restitution fine. We remand the matter for further findings by the juvenile court on these last two issues. In all other respects, the judgment is affirmed. We publish our discussion of the first two issues.

## FACTS

On May 31, 1993, Sergeant George Ruckman stopped the car Shawnn was driving because the rear license plate was obstructed. Ruckman asked for Shawnn's license. Shawnn failed to produce a driver's license.

In the early morning hours of August 6, 1993, Thomas M. was returning from a fishing trip with two acquaintances, Jack and Marty. Jack and Marty were passengers in Thomas's truck. Jack and Marty began to argue and Thomas stopped at the Willow Springs Market to let Jack and Marty out of his truck. Jack and Marty continued to quarrel and scuffled with one another. Thomas left, and when he returned Jack and Marty were still arguing. Thomas told them to stop, but they did not.

As Jack and Marty carried on their dispute, a truck pulled into the parking lot. Shawnn was one of the occupants of the truck. Shawnn got out of the truck and stood next to Marty. Shawnn said Marty was his friend. Thomas remarked Jack was Marty's friend also, and they were just arguing. Shawnn hit Jack in the mouth with a closed fist. He knocked out one of Jack's teeth and chipped other teeth. Thomas helped Jack to Thomas's vehicle, and they left.

### Defense

Shawnn and his witnesses testified that Shawnn simply asked what was going on. Jack swung at Shawnn and he pushed Jack. Shawnn denied hitting Jack in the face.

## DISCUSSION

### I.

The jurisdictional hearing for the petition alleging the battery was scheduled for November 8, 1993. Shawnn's father appeared at the hearing; Shawnn did not. Shawnn's father advised the court he did not feel it was necessary for Shawnn to appear at the hearing. The court continued the hearing until November 12, 1993, and ordered that Shawnn must be present at the hearing.

Shawnn appeared at the November 12, 1993, hearing with his father. The court explained to Shawnn that he had a right to be represented by an attorney, and asked Shawnn if he wished to be represented by an attorney. Shawnn replied that he wished to speak for himself. The court questioned Shawnn as to his educational level and his ability to read and write the English language. Shawnn replied that he could read and write English and he was a senior in high school. The court informed Shawnn of the rights he was giving up, and asked him if, now that he knew these rights, he still agreed to waive having an attorney represent him. Shawnn replied affirmatively.

The court read the allegations of battery to Shawnn and asked if he admitted or denied the charge. Shawnn's father replied, "We are here specially, not generally." The trial court explained that appearances in juvenile court were general appearances. Shawnn denied the charges. The trial court then questioned the district attorney and Shawnn how many witnesses they expected to call. Shawnn's father replied two witnesses; Shawnn replied three. Shawnn did not know how long the testimony would take.

The district attorney then asked to consolidate the other petition, which alleged Vehicle Code violations. The trial court questioned Shawnn about his knowledge of this petition. Shawnn's father was cautioned to let Shawnn answer the question. Shawnn denied the allegations of the second petition. He did not know how many witnesses he would call on the second petition. The matter was continued to November 19, 1993. On November 12, 1993, Shawnn and his father each filed a document challenging the jurisdiction of the court.

At the November 19, 1993, hearing, the trial court stated that Shawnn previously indicated he wanted to represent himself. The court questioned Shawnn if he still wanted to do that, and Shawnn replied yes. The court then went over the rights Shawnn was giving up. The court asked Shawnn if he had ever been through court proceedings before, and Shawnn said no. The court and Shawnn engaged in a long question and answer period. We set forth a substantial portion of the exchange.

"THE COURT: Have you ever been through the Court proceeding before?

"THE DEFENDANT: No.

"THE COURT: Why do you want to represent yourself?

"THE DEFENDANT: Because I don't need an attorney.

"THE COURT: All right. Do you know anything about the rules of evidence?

"THE [DEFENDANT]: Yes.

"THE COURT: What do you know?

"THE DEFENDANT: Nothing.

"THE COURT: All right. Do you understand that you will be required to inform [*sic*] to the rules of evidence just as though you were a lawyer?

"THE DEFENDANT: Yes.

"THE COURT: How do you expect to be able to do that with no legal training?

"THE DEFENDANT: Using the law.

"THE COURT: All right. Have you done some research?

"THE DEFENDANT: Yes.

"THE COURT: What have you done?

"THE DEFENDANT: Under the search of statutes at large Chapter 20, Section 30 September 24, 1989.

"THE COURT: Okay. What is the relevance of the statutes at large to this case?

"THE DEFENDANT: Pardon me?

"THE COURT: What relevance do the statutes at large have to this case? How will they relate to charges against you?

"THE DEFENDANT: Represented by counsel.

"THE COURT: What do you mean by that?

"Mr. [F.], I'll ask you not to coach your son. You're not a lawyer. You're not allowed to represent him. And if you insist upon coaching him in the response of the court's question in regards to subjects you'll be executed [*sic*] from the courtroom. Do you understand that?

"Mr. [F.] [Shawnn's father]: Yes. May I as a guardian counsel my child?

"THE COURT: Not in regard to legal issues.

"MR. [F.]: Where is that written, sir?

"THE COURT: That's the Court's ruling.

"MR. [F.]: That is what the issue is about, sir.

"THE COURT: The issue is whether he can represent himself. If you were a lawyer you could represent him. You're not a lawyer. And I'm not going to allow you to represent your son. I've told you that before.

"MR. [F.]: Even though it's a constitutional item?

"THE COURT: That's correct. Okay. Shawn [sic], let's get back to you. What do statutes at large have to you [sic] with this?

"THE DEFENDANT: Further enact that all the courts in the United States parties may plea the—manager [sic] their own causes and personally counsel or attorney at law as set by the rulings of said court.

"THE COURT: All right. What does that mean?

"THE DEFENDANT: What I just said.

"THE COURT: All right. Do you understand that there is an old legal adage that's true and says that one who represents himself has a fool for a client. Have you ever heard that?

"THE DEFENDANT: No.

"THE COURT: You've never heard that? All right. You're charged with what would be a felony if you were an adult. And I'm going to tell you it would be a gross mistake on your part to refuse the service of an attorney, particularly when the Court's offering to appoint an attorney to represent you.

"Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand you'll be up against a trial attorney who'll try this case and neither he nor the Court will assist you in trying the case?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand your father will not be allowed to assist you in presenting your defense to this case?

"THE DEFENDANT: No.

"THE COURT: Okay. Well, I'm tell [*sic*] telling you that's the case. Do you understand what I'm saying?

"THE DEFENDANT: No.

"THE COURT: All right. What don't you understand about it?

"THE DEFENDANT: If it's a constitutional right.

"THE COURT: Well, I'm telling you you don't have a constitutional right to have your father, who's not an attorney, defend you in this matter.

"THE DEFENDANT: Correct. He's a non union lawyer.

"THE COURT: I know you're able to comprehend that. Do you understand you're going to be totally on your own?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand that if your father attempts to interfere with this trial he'll be rejected [*sic*] from the courtroom?

"THE DEFENDANT: Yes.

"THE COURT: Okay. Do you understand that if I allow you to act as your own lawyer that that will not be a license to abuse the dignity of the Court. And that will not be tolerated. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Okay. Do you understand if I allow you to represent yourself and I later determine that you are engaging [in] misconduct or obstructing the conduct or the process of the trial I will terminate that right?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand what you're charged with?

"THE DEFENDANT: Yes.

"THE COURT: What are you charged with?

"THE DEFENDANT: As of now I'm charged with nothing. It's a mala in se claim such and unnecessary to have an injured party.

"THE COURT: You don't believe you're charged with anything at this time, is that what you're telling me?

"THE DEFENDANT: It's a mala in se crime.

"THE COURT: What's a mala in se crime?

"THE DEFENDANT: I don't have the definition.

"THE COURT: Do you know whether the crime that you're charged with is a specific intent or general intent crime?

"THE DEFENDANT: Pardon me?

"THE COURT: Do you know whether the crime with which you are charged in these petitions are specific intent or general intent crimes?

"THE DEFENDANT: Special.

"THE COURT: Special, what does that mean?

"THE DEFENDANT: I'm in here specially not generally.

"THE COURT: All right. On November 12th, 1993, the document filed in the case has your signature which is entitled notice to the court commercial complaint by affidavits notice of void charges—strike that.

"Notice of void claims and charges complete, absence of all jurisdiction demand from rebuttal proof of jurisdiction production of documents. Did you sign that?

"THE DEFENDANT: Yes.

"THE COURT: Okay. What's that document supposed to accomplish for you?

"THE DEFENDANT: Its courtroom was without jurisdiction.

"THE COURT: All right. The Court finds that the minor has no comprehension whatsoever of the charges against him. That the document that was filed by him is nothing but jibberish [*sic*] and the Court will deny the minor the right to represent himself. The Court will appoint the public defender to represent the minor in this matter, and I've ordered Mr. Vanover to be here. . . . I'm going to order you, Shawn [*sic*], to meet with him without your father present and to discuss this case with him, because he's going to represent you in this matter. You have no comprehension of what you're doing. You don't know what you're charged with. You have no comprehension of how to proceed and any information you would receive appears to be misinformation."

■ Shawnn contends that the trial court erred in denying him his right to self-representation and that the error requires reversal. Shawnn argues that the record does not support the finding that he had no comprehension of the charges against him but to the contrary establishes his understanding. Shawnn asserts that his failure to know the elements of the offenses with which he was charged cannot be used as a basis to deny his right to self-representation. Shawnn thinks the court should not have considered the document he filed because it is clear the document was prepared by his father. Shawnn contends he was not mentally impaired, inarticulate or uneducated and therefore the court's ruling was error.

Respondent counters that minors do not have a right to self-representation. Assuming that minors do have such a right, respondent argues that the record supports a finding that Shawnn was not capable of making a knowing and intelligent waiver.

Shawnn points to *In re Gordon J.* (1980) 108 Cal.App.3d 907 [166 Cal.Rptr. 809, 11 A.L.R.4th 711] as a case where the right to self-representation was extended to a juvenile. Although minor Gordon was granted the right to represent himself, no challenge was made on appeal as to whether this was appropriate. *In re Gordon J.* thus is not dispositive.

The right to be represented by counsel was extended to juveniles by the United States Supreme Court in *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].

In *People* v. *Lara* (1967) 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202], the California Supreme Court held that a minor could waive his right to remain silent and to have an attorney present during a custodial investigation. In reaching this conclusion, the court stated: "In short, with respect to tortious or criminal acts of minors, the law extends no blanket presumption

of incapacity. Rather, while the minor's immaturity will often result in his undergoing different methods of adjudication and treatment, it is simply one element, although an important one, to be weighed with many others in determining the issue of his liability. It is clear the Legislature intends that determination to be made on the particular facts of each case." (67 Cal.2d at p. 381.)

In determining the issue, the court in *Lara* found a persuasive analogy to cases dealing with the waiver of counsel at trial by a minor. The court stated: "[I]t is settled that 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' (*Johnson* v. *Zerbst* (1938) *supra*, 304 U.S. 458, 464 . . . ; accord, *In re Johnson* (1965) *supra*, 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420].) This rule applies to minors as well as adults, and the age of the defendant is simply a factor, although an important one, to be weighed with many others in determining in any given case whether there has been a knowing and intelligent waiver of counsel. (See cases collected in Note, 71 A.L.R.2d 1160.)

"The rule was clearly delineated in *Williams* v. *Huff* (D.C. Cir. 1944) 142 F.2d 91. . . . In applying for a writ of habeas corpus, the defendant alleged that at the time he pleaded guilty to a charge of aggravated assault he was 17 years old, was not represented by counsel, and had not intelligently waived counsel. Writing for the court, Justice Edgerton recognized (at p. 92) that 'Because the interests of society must be protected boys of seventeen are held competent, with certain limitations, to commit crimes and torts.' But he also stressed the various civil disabilities of minors, and remarked, 'It seems to me to follow as a matter of law that a boy of seventeen cannot competently waive his right to counsel in a criminal case.' However, he acknowledged that 'In saying this I do not speak for the court,' and concluded, in accord with the general rule, that 'In view of the majority of the court appellant's competence was a question of fact, in the determination of which his youth was entitled to serious consideration but was not necessarily conclusive. It follows that the District Court should take evidence and determine whether, in the light of his age, education, and information, and all other pertinent facts, he has sustained the burden of proving that his waiver was not competent and intelligent.'

"The holding of the majority in *Williams* has frequently been followed in the federal courts [citations], *and is the law of California*. In *People* v. *Hardin* (1962) 207 Cal.App.2d 336 . . . , an 18-year-old defendant purportedly waived counsel before pleading guilty to being an accessory to burglary. The Court of Appeal observed that 'Although minority itself would

not prevent an intelligent waiver [citation], it is an important circumstance to be observed in the consideration of the other factors of the case' (at pp. 340-341). After reviewing the 'other factors' bearing on the validity of the purported waiver, the court held it to be ineffective, concluding (at p. 343), 'We observe that there is a combination of circumstances which differentiates the particular case before us from very many others, in the youth of the accused, the intricacy of the offense, and the defectiveness of the information.' " (*People* v. *Lara, supra,* 67 Cal.2d at pp. 387-389, italics added.)

Thus, although the *Lara* court was utilizing its analysis as an analogy to the issue before it, it clearly stated that the law in California is that a minor can waive his right to counsel at trial.

In *People* v. *Prysock* (1982) 127 Cal.App.3d 972 [180 Cal.Rptr. 15], this court determined that a 16-year-old's statement was freely and voluntarily given; based on *Lara,* Prysock had waived his rights pursuant to *Miranda.* This court stated, "a minor can effectively waive his constitutional rights." (*Id.* at p. 989.)

The Sixth Amendment right to representation by counsel includes the correlative right to dispense with a lawyer's help. A right to self-representation is implied by the Sixth Amendment. (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].)

"The only [competency] determination a trial court must make when presented with a timely *Faretta* motion is ' "whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action." [Citations.] It is not, however, essential that defendant be competent to serve as counsel in a criminal proceeding . . . .' " (*People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].)

The competency required for adults to waive counsel has been described as " ' "a rational as well as factual understanding of the proceedings against him." ' " (*People* v. *Poplawski* (1994) 25 Cal.App.4th 881, 893 [30 Cal.Rptr.2d 760].)

Although we are convinced the same basic standard applies to juveniles, the age of the minor, including the mere fact the party is a minor, is an important factor to be utilized in making a determination whether a minor is competent to choose self-representation. A court's inquiry of a 17-year-old might not need to be as exhaustive as the inquiry of a 15-year-old, for example. Then again, a certain 15-year-old may impress a court as being

mentally and emotionally mature, beyond the level of the typical 17-year-old. Because one of the purposes of the juvenile court system is to protect the minor, great caution should be used by the courts in determining the competency of a minor's attempt to waive his right to counsel.

Here, Shawnn was 17 years old, in the 11th grade, and could speak and read English. Although he was near the age of majority, he had no previous experience with the juvenile court system. It is also clear that Shawnn's father was attempting to aid the minor. This indicated some pressure by Shawnn's father upon Shawnn to choose self-representation over representation by counsel. This factor has a much greater importance when, as here, the person waiving the right is a minor who is still under the control of the adult who exerts the pressure. Although a person's technical legal knowledge is irrelevant to a competency determination, Shawnn's answers to the court and his written materials were such "jibberish" that it was clear Shawnn had no comprehension of the charges against him. Without a rational comprehension of the charges and the proceedings, Shawnn was unable to properly realize the probable risks and consequences of his actions. In light of the above factors, including Shawnn's status as a minor, the trial court did not abuse its discretion when it found Shawnn was not competent to waive his right to counsel.

## II.

The trial court found that Shawnn had violated Vehicle Code section 12500. That section provides in pertinent part: "No person shall drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code."

Sergeant Ruckman testified that he pulled Shawnn over after he noticed the rear license plate of his vehicle was obstructed. He asked Shawnn for his driver's license. When Shawnn did not produce a driver's license, Ruckman ran Shawnn's name through a Department of Motor Vehicles computer check and was advised that Shawnn had no valid license.

The court initially stated it thought the People had failed to prove a violation of Vehicle Code section 12500. The People referred the court to CALJIC No. 16.631, stating: "I'll refer the Court to CALJIC 16.631 and the authority cited and that's jury instruction which indicates the People do not have to prove that the defendant did not have a license. Since it is a fact that is peculiarly within the defendant's knowledge."

CALJIC No. 16.631 provides: "It is not necessary for the People to prove that the defendant did not have a license [of the appropriate class or

certification] to operate a motor vehicle. Whether the defendant was or was not properly licensed is a matter peculiarly within [his] [her] own knowledge. The burden is on the defendant to raise a reasonable doubt as to [his] [her] guilt of driving a motor vehicle upon a highway without being the holder of a driver's license [of the appropriate class or certification]."

The trial court read the instruction, found it to be the correct law, and concluded that because the matter was within Shawnn's own personal knowledge, the burden was shifted to Shawnn to prove that he had a valid license.

█ Shawnn asserts that the court erred in relying on CALJIC No. 16.631. Shawnn contends this instruction is unconstitutional because it improperly shifts the burden of proof on an element of the crime to the accused. While acknowledging the rule of convenience, Shawnn argues that it should not apply here; whether or not he holds a driver's license is not a fact peculiarly within his knowledge, and the People have ready and convenient access to the records of the Department of Motor Vehicles.

Respondent contends that the rule of convenience applies and views a driver's license as no different than any other type of license where the rule has been previously applied.

The rule of convenience "emerged from a long line of decisions which operate to impose on a defendant the burden of proving an exonerating fact if its existence is 'peculiarly' within his personal knowledge and proof of its *non*existence, by the prosecution, would be relatively difficult or inconvenient. (*People* v. *Boo Doo Hong* (1898) 122 Cal. 606, 608-609 . . . [license to practice medicine]; *People* v. *Fortch* (1910) 13 Cal.App. 770, 775 . . . [license to practice dentistry]; *People* v. *Osaki* [(1930) 209 Cal. 169, 182 (286 P. 1025)] [citizenship by birth]; *People* v. *Marschalk* (1962) 206 Cal.App.2d 346, 349-350 . . . [prescription authorizing possession of narcotics]; *People* v. *Flores* [(1976) 62 Cal.App.3d Supp. 19, 21-23 (133 Cal.Rptr. 759)] [license to do business as a carrier].)" (*People* v. *Yoshimura* (1979) 91 Cal.App.3d 609, 626-627 [154 Cal.Rptr. 314] [permit for explosives].)

The rule was adopted by the California Supreme Court in *People* v. *Boo Doo Hong* (1898) 122 Cal. 606 [55 P. 402]. In *Boo Doo Hong* the court followed the general consensus by legal writers that when there are facts peculiarly and clearly within the knowledge of the defendant, and the defendant can show the evidence without the least inconvenience, then the defendant is required to offer this proof. Both of the legal writings relied on by the court offered license cases as examples. (*Id.* at pp. 608-609.)

Thus, the California Supreme Court in *Boo Doo Hong* clearly held that a defendant has a burden of producing a license when a license would act as a complete defense. "As far back as the case of *People* v. *Boo Doo Hong* (1898), 122 Cal. 606 . . . , it has been the law that when a license or prescription would be a complete defense, the burden is upon the accused to prove that fact so clearly within his knowledge." (*People* v. *Martinez* (1953) 117 Cal.App.2d 701, 708 [256 P.2d 1028].)

In *People* v. *Montalvo* (1971) 4 Cal.3d 328 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518], the California Supreme Court refused to apply the rule of convenience to an allegation that a defendant was 21 years of age or older. "The allegation that the defendant is 21 years of age or over is not a negative averment. A true negative averment, for example that the defendant lacked a prescription for a drug, the possession of which was lawful only on prescription, may often be practically impossible for the prosecution to prove but easy for the defendant to refute. In the absence of a legislative provision that minority is a defense, we do not believe that the relative ability of the prosecution and defense to establish the defendant's age is sufficient to justify invoking the rule of necessity and convenience to relieve the prosecution of its burden of proving the defendant's majority under section 11502.

"The defendant may not necessarily have any substantially greater ability to establish his age than does the prosecution. A defendant's precise age is not a matter within his personal knowledge but something he must have learned either from family sources or public or church records. In this age of documented existence there is little doubt that ordinarily the prosecution may be able to secure evidence of the defendant's age. Moreover, in those rare cases where there is no evidence of the defendant's precise age except his own belief as to what it is, the defendant might be as hard pressed as the prosecution to verify it. If minority be deemed a defense, a defendant in such a case would be at the mercy of the jury's power to disbelieve his testimony even though it be the only available evidence of age. We conclude that a case for the application of the rule of necessity and convenience here has not been made out." (*People* v. *Montalvo, supra,* 4 Cal.3d at pp. 334-335.)

Driving without a valid driver's license is a negative averment just as possessing a controlled substance without a prescription has been held to be. Holding a valid driver's license is a matter within the defendant's personal knowledge and it would not be unduly harsh or inconvenient for a defendant to produce the license. The California Supreme Court in *Boo Doo Hong* specifically endorsed the rule in license cases.

The one factor urged by Shawnn as a reason to not apply the rule of convenience is that the People have ready access to driver's license records

in California. We cannot ignore that much has changed since 1898 in technology and that access to particular types of information can often be achieved with little or no inconvenience in a very short period of time. Yet there is insufficient evidence before us from which we can determine how easily accessible and producible in admissible form this information is to the People. Because the Supreme Court's ruling in *Boo Doo Hong* continues to be good law, and because of the lack of evidence as to the People's access to driver's license information, we choose not to deviate from the well-established principle of applying the rule of convenience to cases involving licenses.

Shawnn failed to produce his driver's license when asked to do so. Sergeant Ruckman ran Shawnn's name through a Department of Motor Vehicles check and was advised that Shawnn did not have a valid license. At trial, Shawnn failed to produce any evidence that he possessed a valid driver's license. Shawnn failed to show he was a licensed driver.

### III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The case is remanded for a determination on the record of whether the battery is a felony or a misdemeanor. The court shall then impose the appropriate fines, making the appropriate findings. In all other respects, the judgment is affirmed.

Ardaiz, P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 1995. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 184.