E. Payson CLARK, Jr., et al., Plaintiffs-Appellants,

v.

The TOWN OF GREENBURGH et al., Defendants-Appellees.

No. 40, Docket 34576.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1970.

Decided Jan. 7, 1971.

Arthur S. Olick, New York City, for plaintiffs-appellants.

George A. Barron, Town Atty., Elmsford, N. Y., for Town and Town officials, defendants-appellees.

Daniel M. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for Secretary of State, Attorney General, and State of New York, defendants-appellees.

Before ANDERSON and FEINBERG, Circuit Judges, and WEINFELD, District Judge.*

FEINBERG, Circuit Judge:

Plaintiffs, 23 residents and two civic associations of defendant Town of Greenburgh, appeal from orders of the United States District Court for the Southern District of New York, Sylvester J. Ryan, J., denying plaintiffs' motion to convene a three-judge court and granting defendants' motions to dismiss the complaint. Appellees are the Town of Greenburgh, its elected officers, the Secretary of State and the Attorney General of New York State, and New York State. Claiming principally that the State-mandated system for electing town officials violates the Equal Protection Clause of the fourteenth amendment, plaintiffs seek declaratory and injunctive relief. For reasons explained below, we affirm the orders of the district court.

Defendant Town of Greenburgh has been a political subdivision of the State of New York since 1788. Divided into six incorporated villages and an unincorporated area, the Town is governed by an elected Town Board composed of a

---

* Of the Southern District of New York, sitting by designation.

Supervisor and four Councilmen. The incorporated villages are substantially self-governing subdivisions of the Town. Each is governed by an elected Mayor and Trustees who, collectively, constitute the village Board of Trustees, which has authority over village residents only. Defendant Town officials, the Supervisor, the four Councilmen, two Justices of the Peace, the Town Clerk and the Receiver of Taxes are elected in a Town-wide election, in which the voters are the residents both of the villages and of the unincorporated area. The village officials, on the other hand, are elected by the village residents only. The avowed aim of plaintiffs in the action before us is to prevent the residents of the villages from voting in the Town elections.

It is agreed that the primary function of the Town officials is to govern the unincorporated area, in which 47 per cent of the Town's 86,000 residents live. However, the Town officials do perform some governmental services for the benefit of the village residents as is shown by the existence of two Town budgets; one for the entire area of the Town, called the Town Entire Budget, and the other for the unincorporated area only, known as the Town Outside Budget. The latter is by far the larger; approximately 95 per cent of the Town revenues are spent for the benefit of the unincorporated area residents, who pay about 95 per cent of the Town property tax revenues. The village residents receive the benefits and contribute the remaining five per cent of the Town expenditures and property tax revenues.

Plaintiffs' legal theories are novel. Contrary to recent cases, for example, City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), and Cipriano v. City of Hou-

ma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed. 2d 647 (1969), plaintiffs argue that too many rather than too few people are allowed to vote in the Town elections. The two classes of plaintiffs, village residents and unincorporated area residents, each claim to be aggrieved in different ways. Those plaintiffs who live in the villages contend that they are over-represented. Because they contribute and receive the benefit of only small portions of the Town budget and are directly governed by village officials, they allege that they do not have a true interest in the Town government and, therefore, should not be allowed to vote in Town elections. In these plaintiffs' words, they complain of "representation without taxation." The plaintiffs who reside in the unincorporated area proceed from the same premise to a different argument. They also claim that because the village residents have so little stake in the outcome of Town elections, it is improper to allow them to vote. Doing so, according to the unincorporated area residents, deprives them of an "equally effective vote in the election process," Avery v. Midland County, 390 U.S. 474, 480, 88 S.Ct. 1114, 1118, 20 L.Ed.2d 45 (1968), and constitutes a forbidden "debasement of voting power and diminution of access to elected representatives," Kirkpatrick v. Preisler, 394 U.S. 526, 531, 89 S.Ct. 1225, 1229, 22 L.Ed.2d 519 (1969).

The narrow issue before us is whether the constitutional issues raised by plaintiffs are "plainly unsubstantial." Ex Parte Poresky, 290 U.S. 30, 32, 54 S. Ct. 3, 78 L.Ed. 152 (1933).[1] As to those plaintiffs who reside in the villages, we do not see how they present a violation of any constitutional right. Indeed, as the district court noted, this is not "a

---

1. Judge Ryan also denied the motion to convene a three-judge court on the authority of Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). Although we affirm the decision below, we do not agree that plaintiffs' case raises only local issues. It appears to us that the injunction sought in this case would necessarily operate against "a

state statute of general and statewide application." *Id.* at 101, 87 S.Ct. at 1548, 18 L.Ed.2d 643. See, e. g., N.Y. Const. art. II, § 1 and art. IX, § 1(b); N.Y. Town Law §§ 20, 80, 84 (McKinney 1965). Cf. Pierce v. Village of Ossining, 292 F.Supp. 113 (S.D.N.Y. 1968).

claim of deprivation of any right, but rather a claim of a right without any legal basis for it." The village-based plaintiffs do receive some, albeit small, services from the Town officials and they are taxed by the Town. But apart from that, if these plaintiffs really feel aggrieved by their right to vote in Town-wide elections, all they have to do is refrain from voting. It may be, as Judge Ryan pointed out, that these plaintiffs are actually complaining because they have to pay taxes to support five per cent of a Town budget for services which benefit them little. But their argument is not pressed upon that theory. Even if it were, they would not prevail; it is not for the courts to determine whether the quantum of services voters receive justifies the taxes they pay.

Those plaintiffs who reside in the unincorporated area attempt to invoke more familiar constitutional theory. They argue that since a state may not dilute their vote by maintaining election districts of unequal population, Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), a state may not dilute their vote by granting the vote to persons having "no substantial interest in and deriving no substantial benefit from"[2] the Town government. Defendants, relying on Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), and Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), argue that it would be unconstitutional to deny the village residents the vote. We agree with defendants that the village residents must be accorded a vote in the Town elections because they have a sufficient interest in the Town government. The village residents are taxed for about five per cent of the two budgets, and we note that neither set of plaintiffs—but particularly those who claim dilution of their vote—directly attack the Town's *power* to levy that tax. If the Town tax on village residents were greater, their right to vote would be more obvious, but it is clear enough on the basis of the tax now in effect.

Moreover, we do not accept the other premises of the argument of these plaintiffs. The village residents apparently do receive or are entitled to the benefit of some Town-provided facilities, e. g., the services of assessors and the use of recreational areas. In addition, plaintiffs have unjustifiably equated an uninterested voter with one who has no connection with the Town at all, including residence. Thus, plaintiffs have argued the case as though the residents of Buffalo were being allowed to vote in the elections of the Town of Greenburgh. We need not decide what consequences or remedies would flow from that egregious improbability. The only voters in the Town elections live there. That the village residents may have less interest in Town elections than the residents of the unincorporated area does not "dilute" the votes of the latter group; if anything, their votes are thereby strengthened since the less interested group will be less likely to vote. More fundamentally, voter "interest" in this sense will always vary from group to group and issue to issue, but this does not "dilute" the vote of any group in the constitutional sense. It is true that the Supreme Court has intimated that in some specialized instances the "one-man-one-vote" rationale may not apply,[3] thereby perhaps allowing the exclusion of some class of voters. But this would hardly help these plaintiffs, who rely on the "one-man-one-vote" analogy for their main constitutional argument. In any event, we do not believe that this case

---

2. Brief for Appellants at 9.

3. E. g., "certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups," *Hadley, supra,* 397 U.S. at 56, 90 S.Ct. at 795; "a special purpose unit of government assigned the performance of functions affecting definable groups of constituents more than other constituents," *Avery, supra,* 390 U.S. at 483–484, 88 S.Ct. at 1120; see also *Kramer, supra,* 395 U.S. at 632, 89 S.Ct. 1886.

presents circumstances which would even allow—much less compel—the State to deny the village residents a vote in the Town elections.

Accordingly, we conclude that on either claim advanced by plaintiffs, Judge Ryan did not commit error by refusing to convene a three-judge court. We realize that, unfortunately, the precise issue before us is not whether plaintiffs are right, but whether their constitutional attack is so wrong as to be plainly unsubstantial. In considering that issue, we have recently attempted to avoid judicial inefficiency by not being overly technical when one district judge and three circuit judges have all agreed that a plaintiff's case on the merits is quite weak. See, e. g., Lewis v. Rockefeller, 431 F.2d 368, 370–371 (2d Cir. 1970); Heaney v. Allen, 425 F.2d 869, 871–872 (2d Cir. 1970). We hold that neither of plaintiffs' theories absolutely required the wastefulness of a three-judge court.

It follows from the foregoing that dismissal of the complaint was not error.[4]

Affirmed.

---

4. Plaintiffs also claimed that the statutory scheme deprived them of due process, a representative or a Republican form of government, and their privileges and immunities. These claims are also plainly unsubstantial.