**William E. SNEAD, Patricia I. Snead, Robert Ray Miller, and John O'Connor, Plaintiffs,**

v.

**CITY OF ALBUQUERQUE, a municipal corporation, Defendant.**

**No. CIV 86–1259 JC.**

United States District Court, D. New Mexico.

July 9, 1987.

Deborah H. Mande, Ruud, Wells & Mande, Albuquerque, N.M., for plaintiffs.

Edward R. Pearson, John W. Pope, Albuquerque, N.M., for defendant.

Steven Barshov, Santa Fe, N.M., for amicus curiae—N.M. Municipal League, Inc.

## MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER came on for consideration of Cross Motions for Summary Judgment in the above cause. The Court has reviewed the memoranda submitted by the parties and amicus curiae New Mexico Municipal League, Inc., and has considered the relevant authorities. Oral argument on the motions was heard on May 26, 1987. The Court finds that there are no disputed facts as to any material issues. Being otherwise fully advised in the premises, the Court finds that the Defendant's Motion for Summary Judgment is well taken and will be granted.

Plaintiffs William E. Snead, Patricia I. Snead, and John O'Connor are Bernalillo County residents who own property located within the city of Albuquerque. Plaintiff Robert Ray Miller is likewise a resident of Bernalillo County, but he does not own property within the Albuquerque city limits. The Plaintiffs seek a declaration of unconstitutionality as to New Mexico Constitution Article IX, Section 12 and its enabling statutes, New Mexico Statutes Annotated §§ 3-30-2, -3 and -6 (Repl. Pamph. 1984).

Further, the Plaintiffs ask that the Court issue a permanent injunction enjoining the City of Albuquerque from further expenditures of funds obtained by or through the general obligation funds generated by elections held on October 4, 1983 and October 8, 1985. Some of these generated funds are to be used in the Montano bridge project which will provide access over the Rio Grande from the west side of Bernalillo County into Albuquerque.

Originally, Article IX, Section 12 of the New Mexico Constitution permitted only resident taxpayers to vote upon creation of a municipal indebtedness. In 1964, this constitutional provision was amended to extend the right to vote on creation of a municipal debt to any person who owned property within the corporate limits of the municipality who had paid a property tax therein during the preceding year and was otherwise qualified to vote in the county where the municipality was situated. The New Mexico Supreme Court has previously rendered inoperable a constitutional provision requiring that only residents who owned real property were permitted to vote in school bond elections. *Board of Education v. Maloney*, 82 N.M. 167, 477 P.2d 605 (1970). Likewise, an enabling state statute which restricted a resident's eligibility to vote to payment of a property tax on property in the school district for the preceding year was declared unconstitutional. *Prince v. Board of Education*, 88 N.M. 548, 543 P.2d 1176 (1975).

In response to Supreme Court and the state court decisions, the enabling statute was amended to eliminate the property tax requirement as to *residents* of the municipality. Compare N.M.Stat.Ann. § 14-29-6 (1953 Compilation) with N.M.Stat.Ann. § 3-30-2 (Repl.Pamph.1984).

Under the New Mexico enabling statutes, county land which is not within the city limits constitutes one voting division known as the "non-resident voting division." N.M.Stat.Ann. § 3-30-1 (Repl.Pamph. 1984). In order to qualify to vote in a municipal bond election, an individual residing within the non-resident voting division must 1) be registered to vote in the county in which the municipality is holding an election on the question of creating a debt is situated, 2) have paid a property tax on property located within the municipality during the year preceding the election and 3) have registered with the municipal clerk his intention to vote at the municipal election in the manner provided in Section 3-30-3. N.M.Stat.Ann. § 3-30-2 (Repl. Pamph.1984).

Plaintiff Miller contends that this statute creates a classification based upon payment of property taxes which violates the equal protection clause of the Fourteenth Amendment of the United States Constitution. In other words, Miller asserts that having extended the vote to some county residents, the state must extend the right to all county residents unless the classification serves a compelling state interest. The Sneads and O'Connor contend that the requirement of and procedures for registering their intention to vote are burdensome require-

ments which serve no compelling state interest. The Plaintiffs have urged the Court to apply strict scrutiny to these New Mexico provisions because voting is involved.

At first glance, the Supreme Court decisions appear to support the Plaintiffs' position regarding the applicable standard for analysis. Upon closer inspection, however, it is the rationale used by the Court which leads me to believe that the strict scrutiny analysis used in *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) and its progeny should not be extended to the unique law at issue here.

In *Kramer*, a New York statute excluded some residents from voting in school elections because they failed to meet additional qualifications beyond age, bona fide residency and citizenship. The Court stated that "if a challenged state statute grants the right to vote to some bona fide *residents* of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest." *Id.* at 627, 89 S.Ct. at (emphasis added). The Court found that the New York statute was not sufficiently tailored to promote the state's interest in limiting the franchise only to those people primarily and directly affected by the election's outcome. Because the statute was both over and under inclusive of people who were primarily affected, the strict scrutiny test proved fatal to the legislation.

On the same day as the *Kramer* decision, the Supreme Court struck down a Louisiana law which provided that only property taxpayers had the right to vote in elections called to approve the issuance of revenue bonds by a municipal utility system. *Cipriano v. City of Houma, et al.*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). The Court held that a classification which excludes *otherwise qualified* voters who are as substantially affected and as directly interested in the matter voted upon must pass the most exacting standards of review.

The *Cipriano* rationale was extended to provide for strict scrutiny of classifications based upon property ownership in general obligation bond elections. *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). In *Phoenix*, the Court found that the differences between the interests of resident property owners and resident non-property owners were not sufficiently substantial to justify excluding the latter from voting. The Court noted that general obligation bond elections are elections of "general interest."

The *Phoenix* court reasoned that although only property tax revenues were to be used for servicing the general obligation bonds, resident non-owners would be equally burdened financially from the issuance of a bond. Owners of property would be burdened by higher taxes while resident non-owners would share the burden in the form of increased rents as landlords passed on the cost of increased taxes. Thus, because city residents would feel the burden either as increased rents or increased taxes, owners and non-owners alike were directly and substantially interested in the outcome of a general obligation bond election.

■ The above cases represent the basic principle that "as long as the election in question is not one of special interest, any classification restricting the franchise on grounds other than residence, age, and citizenship cannot stand unless the district or State can demonstrate that the classification serves a compelling state interest." *Hill v. Stone, et al.*, 421 U.S. 289, 297, 95 S.Ct. 1637, 1643, 44 L.Ed.2d 172 (1975). The City of Albuquerque contends that as to county residents living outside the city limits, the general obligation bond election should be considered one of special interest. If considered as a special interest election, the classification restricting the franchise would be given the minimal level of scrutiny.

Although the arguments of the Defendant City are appealing, the Court feels constrained to find that a general obligation bond issue is a question of general interest. To characterize the same election as a gen-

eral interest election for residents and a special interest for some non-residents seems a convoluted and unnecessary step to conclude that strict scrutinization of the state provisions at issue is inappropriate.

To require an enhanced justification by the state for its classification of non-residents in this case is to ignore the context in which *Kramer* and its progeny were decided. The *Kramer* line of cases focused upon whether classifications of *residents* that exclude some residents from voting were constitutional. The case at bar asks whether a classification of non-residents can validly exclude some non-residents from voting. The Court agrees with Defendant City of Albuquerque that this is a case of first impression with respect both to its facts and the issues raised by those facts. The Court is unaware of any other state which has adopted a provision similar to the one at issue in this case.

All of the Supreme Court decisions cited above utilized strict scrutiny for classifications which *excluded* otherwise qualified residents from voting. Here, New Mexico has extended the right to vote to a group who would have no constitutionally enforceable right to participate in the election in question. The Supreme Court has held that one who resides outside of the governmental unit has no fundamental right to vote in its election. *Holt Civic Club, et al. v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978). In *Holt Civic Club*, the Court recognized that:

> No decision of this Court has extended the "one man, one vote" principle to individuals residing beyond the geographic confines of the governmental entity concerned, be it the State or its political subdivisions. On the contrary, our cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders. Id. at 68–69, 99 S.Ct. at 388–89.

The Plaintiffs in *Holt Civic Club* challenged the constitutionality of a "police jurisdiction" statute extending certain municipal powers over some non-residents of the municipality without permitting the non-residents to vote in the municipal election. Utilizing the rational basis standard of review, the Supreme Court held that the affected non-residents were not denied equal protection where they were not permitted to vote in the city's municipal election.

The Court in *Holt Civic Club* rejected the Plaintiffs' contention that the denial of the franchise to them could be justified only by a compelling state interest. The *Kramer* line of cases was found inapposite because no constitutional right to participate in the political processes was involved. Simply because the issue involved voting classifications was insufficient to bring it within the *Kramer* doctrine.

The Plaintiffs in *Holt Civic Club* had argued that they were as substantially and directly affected as the residents of Tuscaloosa by the outcome in the municipal elections. Speaking for the Court, now Chief Justice Rehnquist noted:

> A city's decisions inescapably affect individuals living immediately outside its borders.... Indeed, the indirect extraterritorial effects of many purely internal municipal actions could conceivably have a heavier impact on surrounding environs than the direct regulation contemplated by Alabama's police jurisdiction statutes. Yet no one would suggest that nonresidents likely to be affected by this sort of municipal action have a *constitutional right* to participate in the political processes bringing it about. Id. at 69, 99 S.Ct. at 389 (emphasis added).

Because the Plaintiffs in this case have no constitutionally protected right to vote in the city's elections, the mere fact that the New Mexico law extends the right to vote to some non-residents does not implicate strict scrutiny by this Court of the provisions. In other words, to implicate the higher standard of review on the basis of a "fundamental right" requires that the right be guaranteed by the Constitution. Moreover, there is no allegation that the New Mexico laws or the drawing of the municipal boundaries invidiously discriminate against a suspect class. The equal protection issue raised by the Plaintiffs "thus stripped of its voting attire" becomes

whether the classification of payment of property taxes by non-residents bears a rational relationship toward promoting a legitimate state interest. See *Holt Civic Club,* 439 U.S. at 70, 99 S.Ct. at 390.

■ Under the minimum level of scrutiny, equal protection is offended only if the statute's classification "rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). In this case, the state contends that it has extended the exercise of the franchise to those directly affected by the outcome of the election. Specifically, the state asserts that the non-resident property taxpayers who will be obligated to pay for improvements should be given the opportunity to participate in the creation of the obligation.

■ The Court must therefore analyze whether the classification rationally limits the extension of the vote to those who are directly affected by the outcome of the election. The *Phoenix* court recognized the direct impact of a bond obligation on the residents of a municipality. Residents, as residents, will be directly affected by creation of a bond obligation through either increased taxes or increased rents. Likewise, all owners of property within the municipality, whether residents of the city or not, are similarly directly affected. Increased property taxes become their obligation and, in essence, impose a lien upon their properties within the city limits.

One who lives outside the city limits and who owns no property within the municipality faces neither higher rents nor higher property taxes as a result of a municipal bond election. Although a municipal bond election decision may significantly affect the environment of some non-resident non-taxpayers, the environmental impact is indirect and not financial. The state has recognized the direct financial interest of non-resident taxpayers. Its extension of the franchise to them represents a rational relationship to assuring that those who have a direct financial interest will create any bond obligation.

Although *all* individuals who own land within Albuquerque will be obligated by the general obligation bond, New Mexico has chosen to extend the vote only to those landowners who are registered to vote in the county and have paid taxes in the preceding year. Plaintiffs argue that in order to promote the state's interest, all owners of property within the municipality should have been given the franchise.

It is true that these additional qualifications will result in an underinclusive classification of those directly interested in the outcome of the election. Indeed, if strict scrutiny were to apply, these additional qualifications would be insufficiently tailored to promote the state's interest. But, as discussed earlier, these additional qualifications need be only rationally related to the state's legitimate interest in extending the franchise to those whose taxes will be potentially increased while assuring that the voting process runs efficiently and honestly. The Court cannot say that the additional qualifications are "... a display of arbitrary power, not an exercise of judgment." *Matthews v. DeCastro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). Rather, the additional qualifications will rationally promote this state's other important interest in preventing abuses of the election process.

One case must be distinguished. In *Deibler v. City of Rehoboth Beach,* 790 F.2d 328 (3rd Cir.1986), the Third Circuit found a requirement that a candidate for elected position be non-delinquent in his taxes was not rationally related to any legitimate government interest. In *Deibler,* the asserted state interests allegedly promoted by the non-delinquency requirement were to screen those candidates who did not have the necessary commitment to the well being of the community and to advance public respect for city government. *Id.* at 334.

Neither of these interests are applicable to the case at bar. Rather, the proof of payment of taxes promotes the state's legitimate interest in efficient and honest election process. Because the vote has been extended to non-residents of the city,

the city must be able to confirm that those to whom the vote has been extended indeed own property within the city limits. Because the records of ownership are kept with the county clerk, certification of payment of property taxes by the county clerk appears to be a reasonable and perhaps the only available method for such a confirmation. Thus, the proof of tax payment by non-residents is a qualification rationally related to promoting the state's interest in the election process itself.

The Plaintiffs further contend that the classification and additional voting requirements violate the due process clause of the Fourteenth Amendment. As to non-residents who do not pay property taxes within the city, no due process violation has been stated. Quoting the Supreme Court, the Plaintiffs' argument "proceeds from the assumption, earlier shown to be erroneous ... that they have a right to vote.... Their conclusion falls with their premise." *Holt Civic Club*, 439 U.S. at 75, 99 S.Ct. at 392.

As to those non-residents who pay city property taxes, the additional burdens and requirements are not constitutionally defective. The Plaintiffs rely upon the difficulties they encountered in meeting the deadline for registering their intention to vote. As pointed out in the Defendant's brief, these difficulties were not the result of the law itself. Rather it was the misinterpretation of the law by the county treasurer which caused problems. To correct this misinterpretation, Plaintiffs should have sought a writ of mandamus or sought an extension of the deadline for the acceptance of the certificates of intention.

In summary, the Court finds that the operable provisions of New Mexico Constitution Article IX, Section 12 as interpreted by the New Mexico Supreme Court and the classifications and requirements of the enabling statutes for creation of municipal indebtedness rationally promote legitimate state interests. The New Mexico provisions at issue are constitutionally justified. There being no material facts in dispute and the Defendant City of Albuquerque being entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment will be granted.

An Order in accordance with this opinion will be entered.