Joan MAY, William Felicelli, John Rielly, Peter Chadman, Virginia Oglesby and David Holubetz, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

TOWN OF MOUNTAIN VILLAGE, a Colorado Municipal Corporation; Darrell Huschke, Mayor and Council Member, Town of Mountain Village, in his official and individual capacities; Julie Cram, David Disick, David C. Flatt, Steve Hilbert, Doug Tueller and Linda Rodgers, Town Council members, in their official and individual capacities, Defendants.

Civil Action Nos. 96–D–126, 96–D–139.

United States District Court,
D. Colorado.

Oct. 18, 1996.

Barry Satlow, Boulder, CO, John H. Steel, Telluride, CO, for Plaintiffs.

J. David Reed, Telluride, CO, Michael T. Gilbert, Robert E. Youle, Williams, Youle & Kroenig, P.C., Denver, CO, for Defendants.

## ORDER

DANIEL, District Judge.

### I. INTRODUCTION

This civil rights class action is before the Court in connection with Plaintiffs' motion for partial summary judgment filed on July 1, 1996 and Defendants' cross motion for partial summary judgment filed July 22, 1996.[1] The Plaintiffs challenge certain voter qualification and districting provisions of the Home Rule Charter ("Charter") of the Town of Mountain Village ("the Town"), State of Colorado. The Town is a European styled master planned community situated in the mountains above Telluride. Plaintiffs seek declaratory, injunctive and other equitable relief and damages on behalf of themselves and all other similarly situated Town residents. The Town seeks a declaratory judgment upholding the constitutionality of the Town's Charter.[2]

The core issues presented appear to be of first impression in this Circuit and include: (1) whether the Town can legally extend the right to vote in its municipal elections to people located throughout the United States and possibly abroad who own property in the Town but who do not reside in the Town; and (2) if so, whether a districting plan based upon the inclusion of such voters is valid. In short, the Plaintiffs allege that the town's voters' qualification and districting scheme as a whole unconstitutionally reduces the power of Town residents' vote and gives disproportionate voting power to nonresident land owners.[3] Plaintiffs allege that this scheme is designed to concentrate control of the Town in the hands of real estate interests so that

---

1. The Plaintiffs and Defendants I refer to herein are the Plaintiffs and Defendants in civil action number 96–D–126. However, I also note for the record that the Town of Mountain Village is the Plaintiff and Joan May is the Defendant in civil action number 96–D–139. These two actions are consolidated.

2. The Charter was approved by the residents in a March 7, 1995 election in which nonresidents were not allowed to vote.

3. The provision of the Charter that extends the franchise to nonresident landowners provides that they must meet the following requirements: (a) they have been owners of record for at least 30 consecutive days immediately prior to the election; (b) during that 30 days they owned a minimum of 50% of the fee title interest in certain real property; (c) they are at least 18 years old on the date of the election; and (d) they are natural persons. Charter, § 2.4(b).

development will be easier and cheaper and the Town can spend less of its resources on the needs of the Town's residents, including affordable housing and open space.[4]

Plaintiffs base their claim of unconstitutionality of the Town's Charter on five arguments, and they are the ones that I have been asked to resolve with respect to the pending motion for partial summary judgment. They are: (i) whether the Equal Protection Clause bars nonresident landowner voting; (ii) whether basing town council districts partly on the number of nonresident landowners violates equal protection; (iii) whether voting by nonresident landowners violates Colorado law; (iv) whether Colorado law requires residency as a condition for participation in municipal charter elections; and (v) whether nonresident landowner voting and charter provisions on initiative and referendum violate Colorado's constitutional right of initiative and referendum. Defendants' motion for partial summary judgment seeks a declaration that the Town Charter is constitutional.

## II. ANALYSIS

### A. Federal Law Claims

1. *Whether Allowing NonResident Landowners the Right to Vote in Municipal Elections Violates the Equal Protection Clause of the Fourteenth Amendment*

#### a. The Parties' Argument

Plaintiffs argue that voting is a fundamental political right, and that it is the citizens or residents of the state who have this right. Plaintiffs rely on the Supreme Court's holding that "an appropriately defined and uniformly applied requirement of residence may be necessary to preserve the basic conception of a political community." *Dunn v. Blumstein,* 405 U.S. 330, 344, 92 S.Ct. 995, 1004, 31 L.Ed.2d 274 (1972). Further, Plaintiffs argue that no court has extended the "one man, one vote" principle to individuals residing beyond the geographic confines of the governmental entity concerned; instead, the cases have uniformly recognized that a government unit may legitimately restrict the

right to participate in its political processes to those within its borders. *See Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 68–69, 99 S.Ct. 383, 385, 58 L.Ed.2d 292 (1978).

Plaintiffs originally asserted in their motion that the appropriate constitutional test to be applied to the Charter provisions at issue was strict scrutiny, arguing that the Town has shown and can show no compelling interest in allowing nonresident landowners to vote which justifies dilution of their fundamental right to vote. Plaintiffs relied on the apportionment cases where strict scrutiny was applied, *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), arguing that vote dilution can occur not only where districts are improperly apportioned, but also in situations such as this case where persons who are not part of the local population are admitted to the franchise.

In their response to Defendants' cross motion for partial summary judgment and at the hearing held on this matter on September 18, 1996, Plaintiffs modified their position. Plaintiffs now suggest that an intermediate standard of review should be applied, although they acknowledge that there is no authority for applying such a standard in a voting case. Finally, Plaintiffs argue that even under a rational relationship test, nonresident voting is not constitutional. Specifically, Plaintiffs assert that there is no rational basis for allowing persons to vote in general municipal elections whose only connection to a town is ownership of property. Plaintiffs argue that nonresident landowners might be institutionally interested in bond and real property tax issues but do not have a cognizable interest in the general governance of the town.

Plaintiffs, in their briefs, distinguish a number of cases where nonresidents were allowed to vote, asserting that these cases involved "special-purpose" elections, such as bond elections, which have narrow and special purposes that disproportionately impact a group such as nonresidents. Alternatively, Plaintiffs argue that the electoral schemes in those cases were different since they were

---

4. Based on the Scheduling Order in this case, there are currently 505 eligible resident voters and 541 nonresident property owners empowered to vote.

sanctioned by the legislature, the nonresidents were living in an adjoining county that had a strong connection or joint interest with the town, and/or the nonresidents constituted a minority of the voters.

Defendants assert that it enacted the provisions of its Charter pursuant to the broad grant of power from the Colorado Constitution which gave the full right of self-government in both local and municipal matters to municipalities, Colo. Const. Art. XX, and to home rule towns the power to "legislate upon, provide, regulate, conduct and control . . . all matters pertaining to municipal elections in such . . . town." Colo. Const. Art. XX § 6. Defendants assert that because § 2.4(b) of the Charter does not infringe on fundamental rights and does not discriminate against any suspect class, it is presumptively valid and subject only to a rational basis review. Defendants further contend that Plaintiffs have failed to meet their burden of showing that section 2.4(b) of the Charter violates the Equal Protection Clause because they have not shown that it is not rationally related to a legitimate state interest.

Defendants argue that the Town is a unique resort community and that its Charter was approved only by residents of the Town. In the Charter, the residents chose to extend the franchise to nonresident property owners. According to Defendants, the Charter has a rational basis since it was adopted to ensure that the special nature of the resort community was safeguarded, that the beauty of the Town's natural surroundings would be preserved, that the recreational nature of the Town must be encouraged and that both residents and nonresidents have a significant interest in fulfilling these objectives. Also, future nonresidents will contribute much revenue to the Town, and currently own more than 34% of the assessed value of real property in the Town compared to about 4% for Town residents. In fact, nonresidents pay nearly eight times more in property taxes than residents. The Charter assures these nonresidents of having a vote in the future of the Town, including tax revenue related issues.

### b. *Analysis*

■ The Equal Protection Clause of the Fourteenth Amendment clearly applies to all action of the state or its subdivisions, including local government action such as in the case at hand. *Avery v. Midland County, Texas*, 390 U.S. 474, 479–80, 88 S.Ct. 1114, 1117–18, 20 L.Ed.2d 45 (1968). The first decision I must make in assessing the constitutionality of the Town's enactment under the Equal Protection Clause is to determine the proper standard of review. Since I find that the Town's voting provision does not impinge on a right or liberty protected by the Constitution, I agree with Defendants that the rational basis standard is appropriate rather than the strict scrutiny test. Here, Plaintiffs do not allege that section 2.4(b) creates any classification whatsoever, that it discriminates against a suspect class, that it treats similarly situated persons differently, or even that the votes of residents and nonresidents are weighted differentially.

Moreover, after a careful review of the record in this case, there is simply no evidence that the Town restricts access to the electoral process or treats voters unequally. In this case, section 2.4(b) of the Charter expands the right to vote and equally weighs the votes of all allowed to vote. Where a law expands the right to vote causing voting dilution, the rational basis test has been applied by the vast majority of courts. *See Clark v. Town of Greenburgh*, 436 F.2d 770, 771–72 (2nd Cir.1971); *Creel v. Freeman*, 531 F.2d 286, 288 (5th Cir.1976); *Duncan v. Coffee County, Tenn.*, 69 F.3d 88, 94 (6th Cir.1995); *Cantwell v. Hudnut*, 566 F.2d 30, 37–38 and n. 15 (7th Cir.1977), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1015, 59 L.Ed.2d 71 (1979); *Spahos v. Mayor & Councilmen of Savannah Beach*, 207 F.Supp. 688, (S.D.Ga.), *aff'd per curiam*, 371 U.S. 206, 83 S.Ct. 304, 9 L.Ed.2d 269 (1962); *Snead v. City of Albuquerque*, 663 F.Supp. 1084, 1085–88 (D.N.M), *aff'd*, 841 F.2d 1131 (10th Cir.1987), *cert. denied*, 485 U.S. 1009, 108 S.Ct. 1475, 99 L.Ed.2d 704 (1988); *Bjornestad v. Hulse (Sierra Lakes Water Dist.)*, 229 Cal.App.3d 1568, 281 Cal.Rptr. 548, 562–64 (1991).

■ Under the rationale basis test, the Charter's voting provision must be sustained

"unless the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental interest]." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980) (quoting *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961)). In other words, to overcome the presumption of validity of the government action, the person challenging the law must demonstrate that it is arbitrary or irrational. *Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745–46, 60 L.Ed.2d 269 (1979); *Borden's Farm Products Co. v. Baldwin,* 293 U.S. 194, 209, 55 S.Ct. 187, 191, 79 L.Ed. 281 (1934).

Plaintiffs have failed to show that the Defendants' reason for allowing nonresident landowners to vote in the Town of Mountain Village is either irrational or arbitrary. I find credible Defendants' contentions that the Town of Mountain Village is a unique resort community where nonresident landowners own the majority of property and pay more than eight times the amount of property tax. Defendants further assert that without the significant revenues the nonresident landowners have contributed to the Town, the Town might never have come into existence. Moreover, the nonresidents continue to bear the weight of the financial burden for the Town. Defendants argue that providing the nonresident landowners the right to vote gives them a voice in the Town's future, including the taxes they will have to pay and how those taxes should be spent. However, the charter ensures that the special nature of the resort community will be safeguarded. These factors demonstrate that the Town had a rational basis for enacting the Charter provision granting nonresident landowners the right to vote.

The Southern District of Georgia's opinion in *Spahos* is similar to this case. Residents therein objected to state statutes which gave the right to vote in municipal elections to nonresident real property owners of the municipality of Savannah Beach who resided in the county where the town was located. Savannah Beach was a resort town with a large summer population of nonresidents. Over half of the property tax valuation in the town was paid by nonresidents. The Court, applying a rational basis review, rejected the residents' claims that nonresident property owners' voting diluted their votes. The court held that it was rational to "permit those persons owning property within the municipality, many of whom were summer residents therein, to have a voice in the management of its affairs." *Id.* at 692; *see also Glisson v. Mayor and Councilmen of Savannah Beach,* 346 F.2d 135, 136–37 (5th Cir.1965); *Duncan,* 69 F.3d at 96–98; *Snead,* 663 F.Supp. at 1087–89; *Bjornestad,* 281 Cal.Rptr. at 562–65.

Accordingly, since I find that the Charter provision allowing nonresident landowners to vote in municipal elections satisfies the requirements of the rational basic standard, summary judgment in Defendants' favor is GRANTED as to this issue.

2. *Whether the Charter Provision which Apportions Districts Based on Qualified Voters, including Nonresident Landowner Voters, Violates the Equal Protection Clause of the Fourteenth Amendment*

Until amended in the election of April 4, 1996, § 3.1(a)–(c) of the Charter established the town council districts based on the "potential density" of the Town at build-out. As amended, the Charter bases the districts on qualified voters, including nonresident landowners eligible to vote. On November 5, 1996, the Town asserts that it will submit a proposal of Joan May's to the voters to abandon districting altogether and allow at-large voting.

Plaintiffs argue that the districting provisions of both the original Charter and the Charter, as amended, resulted or will result in grossly unequal populations, under-representing the residents of the town who live in rental housing concentrated in two of the seven districts. Plaintiffs further argue that the Charter violates the Federal Constitution which requires that districts be based on equal populations and violates the principle of one person-one vote. *See Reynolds,* 377 U.S. at 579, 84 S.Ct. at 1390–91; *Avery,* 390 U.S. at 484–85, 88 S.Ct. at 1120–21.

Defendants assert that the arguments regarding sections 3.1(a)–(c) of the Charter

and the voting districts established therein are either moot or not yet ripe. First, Defendants assert that any request for relief which would require the Town to redraw the original districts has been mooted by the April 4, 1996 election which requires the Town to reform the original districts before the next Town council election. I agree that Plaintiffs' claim that the original Charter violated equal protection is moot. *See Shimabuku v. Britton,* 503 F.2d 38 (10th Cir.1974) (where new regulations had been written which satisfied constitutional requirements, so that plaintiffs had already received everything they sought and could be granted, their due process claim was effectively mooted); *Bradley v. Judges of the Superior Court,* 531 F.2d 413, 417 (9th Cir.1976) (equal protection challenge to law was dismissed as moot when amendments to law removed any claimed constitutional infirmity).

■ Second, Defendants assert that any challenge to the amended Charter which requires that new districts be redrawn based upon qualified voters is not ripe or may become moot. Specifically, the districts have not and may not be redrawn depending on the results of the November 5, 1996 election wherein the voters will determine whether districting should be abolished in favor of at-large voting. I agree with Defendants that this issue is not yet ripe for review by this Court. "Allegations of possible future injury do not satisfy the requirements of Article III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 1725, 109 L.Ed.2d 135 (1990); *see also Nat'l Conference of Catholic Bishops v. Smith,* 653 F.2d 535 (D.C.Cir.1981) ("The mere existence of a statute does not create a 'case or controversy,' particularly when, as here, the position of the government itself is far from definite and certain as to what the statute requires with the consequence that

action is either unlikely or, at least, not imminent.") Moreover, if the voters abolish districting in the November election, this issue will become moot.

■ Accordingly, since I find that the apportionment claim is either not yet ripe or else is moot, summary judgment in Defendants' favor is GRANTED as to this issue.[5]

### B. *State Law Claims*

■ Plaintiffs assert the following pendent state law claims: (i) whether the durational residency requirements and voting rights of nonresident land owners violate the Colorado Statutes; (ii) whether allowing nonresident landowners to vote in charter elections violates the Colorado Constitution and Statutes; and (iii) whether nonresident landowner voting and Charter provisions on initiative and referendum violate Colorado's constitutional right of initiative and referendum. I decline to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c)(1) and (3). These claims involve novel issues of State law, and I have granted summary judgment as to all claims over which I have original jurisdiction. Accordingly, the state law claims are DISMISSED WITHOUT PREJUDICE.

### IV. *CONCLUSION*

For the reasons stated above, it is

ORDERED that summary judgment in favor of the Defendants is GRANTED as to the entirety of Plaintiffs' federal law claims based on equal protection. It is

FURTHER ORDERED that Plaintiffs' state law claims are DISMISSED without prejudice as this Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(1) and (3).

---

**5.** Plaintiffs' Amended Complaint asserts a further federal claim that the durational residency requirement of the charter, § 2.4(a)(1), violates the Equal Protection Clause. Specifically, until amended in the April 4, 1996 election, the charter provided that to qualify to vote, a resident of the Town must be a resident for 180 continuous days. Plaintiffs asserts that this law disenfranchised citizens who had recently moved to the

Town, burdened their right to migrate and deprived them of the fundamental right to vote. It is not clear whether Plaintiffs still seek relief under this claim. Nonetheless, I find that this issue is moot given the fact that the charter was amended to allow residents of 30 days to vote, the constitutionality of which Plaintiffs do not challenge. *See Shimabuku,* 503 F.2d at 44; *Bradley,* 531 F.2d at 417.